# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEW PRIME, INC.,** | : | Civil No. 3:14-CV-2410 |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | (Judge Mariani) |
| | : | |
| **BRANDON BALCHUNE** | : | |
| **CONSTRUCTION CO., et al.,** | : | (Magistrate Judge Carlson) |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

**I.    Factual Background**

In life, and in litigation, timing is everything. A party who acts to hastily in bringing a claim may have that claim denied. Conversely, undue delay can be a litigant's enemy and result in a complaint being barred.

This case illustrates the importance of timing in litigation. This matter comes before the Court for resolution of a motion filed by the plaintiff, New Prime, Inc., to amend its complaint to assert a direct claim against an additional defendant, Midlantic Engineering, Inc. Midlantic was originally brought into this litigation by another defendant, Brandon Balchune Construction Company, in August of 2015, but New

Prime waited until February of 2016 to move to amend its complaint to also assert a direct claim against Midlantic.

Midlantic argues that New Prime's delay in pursuing this direct claim is both undue and prejudicial. New Prime counters this claim by insisting that it needed to complete its own due diligence before seeking leave to amend its complaint, and insists that an earlier filing would have been premature and improper. Judging these competing claims against the animating legal standards that inform the amendment of pleadings, a standard which provides that leave to amend should be freely given when justice so requires, we conclude that leave to amend should be granted in this case for the reasons set forth below.

The pertinent facts in this case are as follows: This is a diversity lawsuit brought by New Prime arising out of what are alleged to have been a breach of contract and implied warranties in connection with the construction of a parking lot for up to 450 tractor trailers which was to be owned and operated by New Prime. (Doc. 1.) In its original complaint, which was filed in December of 2014, New Prime initially sued Brandon Balchune, Inc., and Pocono Transcrete, Inc., in this lawsuit, alleging that the defendants used defective concrete in the construction of this trucking parking lot. (Id.) These two defendants, in turn, filed answers denying New Prime's claims, along with cross-claims against one another. (Docs. 9-12.)

As the litigation progressed responses to initial written discovery identified other potentially culpable parties, including the designer of the parking lot, Patrick McLaine and Civil Design Partners, Inc., as well as the site superintendent and site managers for this construction project, Ralph Ranieli, Samuel Marranca and Samuel Marranca General Contracting Company. Accordingly, in July of 2015, New Prime filed an unopposed motion to add these defendants to this lawsuit, a motion which was granted by the district court. (Docs. 32 and 34.)

New Prime then filed an amended complaint naming these additional defendants on August 10, 2015. (Doc. 36.) On that same date, August 10, Balchune, one of the original defendants in this action, filed a joinder complaint against Midlantic Engineering, Inc., a firm that Balchune alleged was contractually obliged to perform concrete testing and quality control analysis on the concrete used in this parking lot development project. (Doc. 37.) In its joinder complaint, Balchune alleged that Midlantic failure to perform under its agreement with Balchune contributed to any deficiencies in the construction of this parking lot. (Id.)

At the time that Balchune filed its joinder complaint against Midlantic, New Prime did not immediately seek to assert a direct claim against this recently joined additional defendant. Instead, New Prime deferred any action on this score for some five months, until January 21, 2016, when it filed a motion to amend its complaint to

assert a direct claim against Midlantic. (Doc. 104.) Midlantic has opposed this request, citing what it perceives to be an undue and prejudicial delay on New Prime's part in seeking to assert this direct claim, and the contrasting positions of the parties reveal two different narrative threads relating to the timing of New Prime's decision to file this motion.

For its part, Midlantic views the timing of this motion as an example of prejudicial delay and indolence. On this score, Midlantic notes that its involvement in this construction project was revealed through written discovery disclosures by the late spring and early summer of 2015. Midlantic also asserts that its involvement in these matters was sufficiently clear to Balchune that Balchune filed its joinder complaint against Midlantic in August of 2015. Given these facts, Midlantic urges us to find that New Prime delayed unduly in seeking leave to assert a direct claim against it, and contends that this delay was prejudicial to Midlantic since Midlantic had opted to forego attending a deposition of an officer of New Prime, Mr. Yarborough, which took place in January of 2016 shortly before this motion to amend was filed. Arguing that New Prime would have known by the time of this deposition that it planned to seek leave to amend to assert a direct claim against Midlantic, Midlantic contends that it has been unfairly prejudiced by the delay in filing this motion since it did not participate in this deposition of New Prime's employee,

something it would have done had it known that New Prime intended to assert a direct claim against it in the following days.

New Prime, in turn, responds to this factual narrative by explaining that, while written discovery had identified Midlantic's involvement in this project, that discovery was from its perspective incomplete. In particular, New Prime notes that the copy of the written contract between Balchune and Midlantic produced in initial documentary discovery was unsigned. The lack of a fully executed written contract, in New Prime's view, cautioned against the premature assertion of a direct claim against this defendant. New Prime further acknowledges that Balchune brought its own claims against Midlantic in August of 2015, but insists that its own separate duty of due diligence required it to develop a factual basis for its own claims before seeking leave to amend, rather than simply trying to "piggy-back" on Balchune's joinder complaint. According to New Prime, the factual basis for asserting direct claims against Midlantic only became clear following January 11 and 12, 2016 depositions of the principals at Balchune. In the course of these depositions the nature of the contractual obligations of Midlantic were thoroughly outlined, and New Prime now believed it had a complete factual basis for amending its complaint to assert a direct claim against Midlantic.

As for Midlantic's claims of undue prejudice as a result of the delay in filing this motion to amend, New Prime asserts a two-fold response: First, it notes that New Prime's counsel had notified counsel for Midlantic that it might file a motion to amend to assert a direct claim against Midlantic prior to the scehduled deposition of its employee, Mr. Yarborough. Therefore, New Prime insists that Midlantic had prior notice of the possibility of this motion at the time it opted to forego attending the deposition of New Prime's employee. Further, New Prime points out the deposition revealed that the New Prime employee-deponent, Mr. Yarborough, had no direct knowledge of Midlantic's involvement in this construction project, a fact which reduces any potential prejudice stemming from Midlantic's failure to participate in this deposition. Citing these facts, New Prime argues that Midlantic would not be unfairly prejudiced by permitting the amendment of the pleadings at this stage to allow the assertion of a direct claim by New Prime against Midlantic.

Having considered the competing positions of the parties, and mindful that the Federal Rules of Civil Procedure favor amendment of pleadings when justice so requires, we conclude that this motion to amend should be granted.

## II. Discussion

### A. Rule 15 -Standard of Review

Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplementation of pleadings. Fed. R. Civ. P., Rule 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of the responsive pleading, or 21 days after service of a dispositive motion under Rule 12, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A) and (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2).

Consistent with the plain language of this rule, leave to amend rests in the discretion of the Court. That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15. In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion in ruling upon a motion to amend, <u>Bjorgung v. Whitetail Resort, LP</u>, 550 F.3d 263 (3d Cir. 2008); <u>Cureton v. National Collegiate Athletic Ass'n.</u>, 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party. <u>Adams</u>, 739 F.2d at 864.

> Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the district court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.' In re Burlington Coat Factory Sec. Litig.., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

Moreover, a party seeking to supplement pleadings must act in a diligent fashion. "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will 'focus on the movant's

reasons for not amending sooner,' Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the district court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988)." Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266. However, any assessment of the reasonableness of a delay in a given case must also take into account the legal and ethical obligations of counsel to determine whether they have grounds to bring a claim, and delays resulting from the discharge of this responsibility have been deemed appropriate and fair. On this score, courts that have considered claims of undue delay in this setting have observed that: "The Federal Rules of Civil Procedure require that a party have a proper legal and factual foundation before initiating a lawsuit or filing a claim against a party. Fed.R.Civ.P. 11(b)." Synthes, Inc. v. Marotta, 281 F.R.D. 217, 226-27 (E.D. Pa. 2012). Thus, where "[p]laintiffs plausibly allege that although they knew of the participation of the additional defendants and the possibility of some of the additional claims, they did not have sufficient support for adding such defendants or claims until it had the opportunity to test their theories during discovery," Id., they are entitled to defer filing a motion to amend until discovery reveals a legal and factual basis for asserting a claim. If a plaintiff seeks leave to amend at "the first plausible period" once discovery has given it the ability to fulfil its legal and ethical duties, then a court typically will not find any "undue delay or unfair tactics." Id.

Finally, in every instance, the exercise of this discretion must be guided by the animating principle behind Rule 15, which is "to make pleadings a means to achieve an orderly and fair administration of justice." Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 227 (1964). Therefore, in considering a motion to amend we must always "appl[y] Rule 15 . . . in a manner aimed at securing the just, speedy and inexpensive determination of every action." CMR D.N. Corp. v. City Of Philadelphia, No. 07-1045, 2011 WL 857294, *4 (E.D.Pa. March 11,2011)(Stengel, J.).

## B. This Motion to Amend Should Be Granted

In this case, we find that the proper exercise of the court's discretion, Hassoun v. Cimmino, 126 F.Supp.2d 353, 360-61 (D.N.J.2000), calls for granting New Prime's motion to amend. Indeed, a dispassionate assessment of this motion reveals that it adhere to the cardinal factors which guide the exercise of judicial discretion in this field.

At the outset, it cannot be said that the amended complaint would be futile in that it would be immediately subject to dismissal for failure to state a claim upon which relief may be granted. In fact, Midlantic does not assert that this claim would be facially meritless, and did not seek to dismiss this claim which it was initially lodged by Balchune. We further note that Rule 14(a)(3) of the Federal Rules of Civil

Procedure would appear to authorize the plaintiff to bring direct claims of this type against additional defendants where, as here, those claims arise out of the same transaction or occurrence as the plaintiff's original claims. Therefore, in this case leave to amend could not be denied on grounds that the amendment would be futile.

Given the colorable merit of the claims which New Prime seeks to pursue against Midlantic, our analysis of this motion for leave to amend turns to considerations of prejudice and delay. In this case, we cannot conclude that there has been undue delay in the pursuit of these matters by plaintiff's counsel. As we have noted, "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will 'focus on the movant's reasons for not amending sooner,' Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the district court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988)." Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266. However, it is also clear that delay occasioned by a party's need to confirm facts necessary to support a claim is not undue delay. Quite the contrary, such a delay is

legally and ethically necessary to comply with counsel's obligations under Rule 11. See Synthes, Inc. v. Marotta, 281 F.R.D. 217, 226-27 (E.D. Pa. 2012).

Judged against these standards, while we acknowledge that the plaintiff's counsel might have moved sooner, we cannot fault counsel for waiting until January of 2016, when depositions confirmed a factual basis for making these claims. We also agree that it would have been imprudent to act, and level grave allegations of culpability based solely upon an unsigned copy of a contract, or the allegations made by another party in this litigation, Balchune. New Prime prudently deferred acting until it was satisfied through discovery that legal and factual grounds existed for asserting a direct claim against Midlantic. Moreover, once the depositions of Balchune's principals revealed factual grounds for lodging an amended complaint, New Prime acted promptly filing this motion for leave to amend by January 21, 2016. Finally, with respect to Midlantic's claims of prejudice due to its failure to attend the deposition of New Prime's witness, Mr. Yarborough, we are persuaded that this factor does not overcome the plain language of Rule 15, which provides that: " a party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2). In particular we note that two factors largely mitigate this claim of prejudice: First, it is evident that New Prime placed Midlantic on notice that it might

12

seeks to amend its complaint to lodge a direct claim against Midlantic prior to the deposition of New Prime's employee, Mr. Yarborough. Therefore, Midlantic elected to forego attending this deposition, knowing that New Prime was still considering the possibility of asserting a direct claim against it. On these facts, we cannot say that Midlantic has been unfairly prejudiced. Moreover, it seems from the deposition excepts provided by New Prime that Mr. Yarborough was singularly uninformed about Midlantic's alleged involvement in these matters. Therefore, it is not apparent how foregoing the opportunity to depose Yarborough has materially prejudiced Midlantic in its defense of this claim. In any event, the remedy for any such prejudice may lie in re-opening discovery for the limited purpose of allowing Midlantic to pursue discovery of these matters. Given the liberal view towards amendment pleadings embodied in Rule 15, re-opening discovery, rather than forecasting claims, this would seem to be the preferable course for addressing these claims of potential prejudice.

Finally, granting leave to file an amended complaint on these facts would be completely congruent with the guiding principle which animates and informs the exercise of our discretion, which is "to make pleadings a means to achieve an orderly and fair administration of justice." Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 227 (1964). Since the amendment is, in our view, timely and

appropriate, and any prejudice stemming from granting this motion can be cured through a brief extension of discovery deadlines tailored to the needs of the parties, in accordance with Rule 15's admonition that leave to amend should be granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), we will grant this motion for leave to amend.

An appropriate order follows.[1]

### III. Order

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's motion for leave to file an amended complaint, (Doc. 104.), is GRANTED.

So ordered this 13th day of July 2016.

---

[1] We address this motion by way of a memorandum and order rather than a Report and Recommendation because a ruling granting a request to amend a complaint is a non-dispositive motion which falls within the jurisdiction of a magistrate judge, subject to appeal to the district court. See e.g., Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993)(A motion to amend a complaint is a non-case-dispositive pretrial matter subject to the clearly erroneous or contrary to law standard of review); Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778 (E.D.N.C. 2011); Rubin v. Valicenti Advisory Services, Inc., 471 F. Supp. 2d 329 (W.D.N.Y. 2007)(A motion for leave to amend a pleading is properly considered a non-case-dispositive matter under § 636(b) that is reviewed under the clearly erroneous or contrary to law standard of review); Ambrose v. Southworth Products Corp., 953 F. Supp. 728 (W.D. Va. 1997)(A motion to amend is a non-case-dispositive motion, and a magistrate judge's ruling on it is subject to reversal only upon a finding that the order is clearly erroneous or contrary to law); Bryant v. Mississippi Power & Light Co., 722 F. Supp. 298 (S.D. Miss. 1989)(A motion to amend a complaint, resulting in remand for lack of subject matter jurisdiction, was treated as a non-case-dispositive matter).

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge