IN THIS UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEW PRIME, INC.,** | : | Civil No. 3:14-CV-2410 |
| | : | |
| Plaintiff | : | **(Judge Mariani)** |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **BRANDON BALCHUNE** | : | |
| **CONSTRUCTION,** | : | |
| **POCONO TRANSCRETE, INC.,** | : | |
| **PATRICK McLAINE, P.E., CIVIL** | : | |
| **DESIGN PARTNERS, INC., JERRY** | : | |
| **and SAMUEL MARRANCA** | : | |
| **GENERAL CONTRACTING,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |
| v. | : | |
| | : | |
| **MIDLANTIC ENGINEERING, INC.,** | : | |
| | : | |
| **Additional Defendant** | : | |

## REPORT AND RECOMMENDATION

**I.     INTRODUCTION**

Now pending before the Court is Midlantic Engineering, Inc.'s motion to dismiss the second amended complaint that New Prime Inc. has filed in this case. Midlantic has filed this motion to dismiss following this Court's entry of an order

permitting the amended pleading. Midlantic previously opposed the plaintiff's motion for leave to file the second amended complaint on the sole ground that New Prime delayed unreasonably in seeking the amendment, and several months after leave was granted, and after the complaint was eventually filed and served, Midlantic has now filed the pending motion to dismiss, arguing that the plaintiff's claims for breach of contract and negligence fail to state a claim upon which relief can be granted. Midlantic, in effect, argues that the plaintiff's claims against it are legally meritless because they are predicated on alleged contractual duties that the contract to which it is not even a party does not impose, and that the law would not recognize.

The plaintiff and Pocono Transcrete, another defendant, have opposed the motion, arguing that the Court previously considered the proposed amendment when granting leave, and maintaining that Midlantic's motion is improper because it asks the Court to go beyond the pleading itself to consider facts and arguments that are better suited to a motion for summary judgment. The Court agrees, and it will be recommended that Midlantic's motion be denied without prejudice to reasserting these arguments in a later dispositive motion that is supported by a more thoroughly developed factual record.

## II. BACKGROUND

The factual background is taken chiefly from the allegations in the plaintiff's second amended complaint, which are accepted as true for purposes of considering the pending motion to dismiss.

New Prime initiated this action seeking recovery for damages and breaches of contract and implied warranties against defendants Brandon Balchune Construction Company and Pocono Transcrete, stemming from the sale of allegedly defective and non-conforming concrete used in the construction of a 242,000 square foot trailer "drop lot" designed for up to 450 tractor trailers which was to be owned and operated by New Prime. New Prime alleges that it has or will suffer more than $2 million in losses as a result of these defendants' alleged failures.

New Prime is a trucking company, not a construction or concrete company, and for that reason contends that it relied upon the skill and expertise of Balchune and other subcontractors, including Midlantic, to construct the drop lot. (Second Am. Compl., ¶ 16, 34.) New Prime contracted directly with Balchune for the construction of the drop lot, and alleges that Balchune subcontracted with Midlantic to provide expert testing and consulting services with respect to the quality control of the project, the concrete, and the foundation upon which the

concrete was poured. (*Id.* ¶¶16, 34, 21, 25.) New Prime did not contract directly with Midlantic.

The drop lot was intended to support heavy commercial truck traffic. Prime accepted Balchune's bid proposal of $1,631,278 to construct the lot. (*Id.* ¶ 22.) Construction began in September 2012 and was completed by January 2013. By March 2014, a little more than a year after Balchune had finished the project, approximately 60% of the lot was visibly cracking, peeling, or otherwise deteriorating. (*Id.* ¶¶28-31.)

In August 2012, prior to commencing construction, Balchune entered into a contract with Midlantic pursuant to which Midlantic allegedly agreed to provide geotechnical inspection and testing services relating to the subgrade and subbase, together with "observations, testing activities and recommendations," structural inspection and testing the workability, percentage of entrained air and strength of the concrete. (*Id.* ¶ 21; Doc. 183, Ex. D, Contract between Balchune and Midlantic dated September 21, 2012.) According to the second amended complaint, Midlantic knew that the contract was for the purpose of constructing a drop lot that conformed to the design and construction specifications, and that it undertook to perform its work under the contract in a good and workmanlike manner for the benefit of New Prime as a third-+party beneficiary of the contract. (Second Am. Compl, ¶ 105.)

Balchune and Pocono Transcrete answered the original complaint and filed cross-claims against one another. (Docs. 9-12.) As the litigation progressed, responses to initial written discovery identified other potentially culpable parties, including the designer of the parking lot, Patrick McLaine and Civil Design Partners, Inc., as well as the site superintendent and site managers for the construction project, Ralph Ranieli, Samuel Marranca and Samuel Marranca General Contracting Company. Accordingly, in July of 2015, New Prime filed an unopposed motion to add these defendants to the lawsuit, a motion that the district court granted. (Docs. 32, 34.)

New Prime filed its amended complaint on August 10, 2015. On the same date, Balchune filed a joinder complaint against Midlantic, which Balchune alleged was contractually obligated to perform concrete testing and quality control analysis on the concrete used in the parking lot development project. (Doc. 37.) In the complaint, Balchune alleged that Midlantic's failure to perform under its agreement with Balchune contributed to the alleged deficiencies in the construction of the drop lot. (Id.)

After Balchune filed its joinder complaint against Midlantic, New Prime did not immediately seek to assert a direct claim against this recently joined additional defendant. Instead, New Prime deferred any action on this score for some five months, until January 21, 2016, when it moved to file a motion to amend its

5

complaint to assert a direct claim against Midlantic. (Doc. 104.) Midlantic opposed the request, not on the grounds that the potential new claims were meritless, but because it contended that New Prime had waited too long to seek leave to amend, arguing that it was prejudiced by New Prime's unreasonable delay. The motion was litigated and on July 13, 2016, the Court entered an Order granting the motion. (Doc. 138.)

Although Midlantic did not challenge the merits of the proposed amendment, although the Court had found that "it cannot be said that the amended complaint would be futile in that it would be immediately subject to dismissal for failure to state a claim," (*id.*, p. 10), and despite the fact that the Court found that the proposed amendment would be authorized in this case because the claims arose of the same transaction or occurrence as the original claims, Midlantic has moved to dismiss the amended complaint pursuant to Rule 12(b)(6). In essence, Midlantic has argued that New Prime's claims for breach of contract allege contractual obligations that are not found in the actual contract between the parties, and that the Court should find from the pleadings alone that Midlantic had no legally recognized duty with respect to New Prime, and therefore the complaint fails.

III. <u>**STANDARD OF REVIEW**</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. It is proper for the court to

dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has

not alleged. . ." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal,* "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## IV. DISCUSSION

As noted, Midlantic's motion challenges New Prime's claims for breach of contract and negligence – which are pleaded in the alternative – not so much on the grounds that the claims are meritless on their face, but because the claims do not square with the contractual duties set forth in Midlantic's subcontract with Balchune.[1]

In the second amended complaint, New Prime alleges that Midlantic breached its duties under the contract with Balchune, and thereby injured New Prime as a known third-party beneficiary of the agreement. Specifically, New Prime claims that Midlantic failed adequately to perform requisite geotechnical and structural inspections, quality control, and testing, and failed to report defects, deficiencies, or non-conformities to both Balchune and New Prime. (Second Am. Compl., ¶ 25.) In this regard, the complaint alleges that Midlantic breached the following duties and was negligent for:

- Failing to inform Balchune and New Prime if Midlantic was not provided with specifications for the project that would typically be provided for a project like the drop lot and to take reasonable steps necessary to determine the required specifications for the project;

---

[1] New Prime's negligence claim is essentially grounded in the same duties as were allegedly imposed by the contract between Balchune and Midlantic. Midlantic argues that even if considered through the lens of a negligence claim, Pennsylvania law would not recognize the alleged duties.

- Improperly performing its work on the contract if it lacked specification for the project that would typically be provided for a project of the type and scope as the drop lot;

- Failing adequately to confirm and ensure that the subgrade and subbase was properly prepared prior to placement and pouring concrete;

- Failing to take steps necessary to prevent the improper placement of the concrete; and

- Misrepresenting to New Prime and others that the subgrade and subbase were properly prepared prior to pouring and placement of the concrete.

(Second Am. Compl., ¶ 107(a)-(v).) New Prime further alleges that the defects, non-conformities and premature deterioration of the concrete installed during the construction of the drop lot was caused or contributed to by Midlantic's negligent, reckless or careless acts or omissions. (Second Am. Compl., ¶ 116.) New Prime alleges damages in excess of $3 million. (*Id.*, ¶ 109.) New Prime pleads that Midlantic breached the terms of its contract with Balchune, thereby injuring New Prime as an intended third-party beneficiary; or, alternatively, that Midlantic breached a duty of care that it owed to New Prime as the owner of the drop lot who reasonably relied upon Midlantic's expertise, and therefore is liable in negligence.

### A. Breach of Contract

Midlantic has agreed, at least for purposes of the pending motion to dismiss, that New Prime would qualify as a third-party beneficiary of the contract between Balchune and Midlantic.

Pennsylvania has adopted the Restatement (Second) of Contracts § 302, which allows for third-party intended beneficiaries to sue for breach of contract "even though the actual parties to the contract did not express an intent to benefit the third party." *Shumate v. Twin Tier Hospitality, LLC*, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009) (quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008)). Section 302 provides that:

> (1) Unless otherwise agreed between promisor and promise, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.

To meet the requirements, a plaintiff must satisfy a two-prong test:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promise to pay money to the beneficiary" or "the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance."

*Id.* (quoting *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*, 39 F. Supp. 2d 517, 535 (M.D. Pa. 1999) (citing *Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147, 150 (1992) (quoting *Guy v. Liederbach*, 501 Pa. 47, 459

A.2d 744, 751 (1983)). The first element is essentially one of standing, which is a matter for the Court to determine. *Williams Controls*, 39 F. Supp. 2d at 535. The second question distinguishes intended third-party beneficiaries, who have rights enforceable under Section 302, from incidental third-party beneficiaries, who do not have rights under Section 302. *Id.*

To recover under a theory of breach of contract, a plaintiff must show the existence of an agreement, including its essential terms, a breach of a duty imposed by that agreement, and damages resulting from the breach. *Guerra v. Redevelopment Authority of City of Philadelphia*, 27 A.3d 1284, 1289 (Pa. Super. Ct. 2011). Under Pennsylvania law, when a party fails to perform an obligation imposed by the agreement, the lack of performance is considered to be a breach of the agreement. *John B. Conomos, Inc. v. Sun Company, Inc.*, 831 A.2d 696, 707-08 (Pa. Super. Ct. 2003).

In this case, there does not appear to be any dispute at this time that New Prime satisfies both of these first two prongs with respect to the facts alleged in the second amended complaint, and the Court finds that New Prime has pleaded sufficient facts to show that it was an intended third-party beneficiary. Midlantic seems to recognize that the facts as pled would be sufficient to show that New Prime has stated a claim; what Midlantic is attempting to argue, however, is that the actual terms of the agreement between Midlantic and Balchune do not obligate

Midlantic to perform some or all of the obligations that New Prime has alleged. Midlantic does not go into specific detail in comparing the allegations in the complaint to the contractual obligations that Midlantic agrees that it had under the terms of its agreement. Instead, Midlantic seems to be inviting the Court to lay the complaint next to the written agreement and read that agreement to reach the conclusion that Midlantic has asserted, namely, that the actual terms of the agreement cannot be read to embrace the obligations that New Prime now claims Midlantic had under that agreement.

The Court appreciates Midlantic's argument, and recognizes that New Prime bears the burden of ultimately showing that the contract between Balchune and New Prime created the obligations that New Prime claims Midlantic failed to perform. The Court also recognizes that the specific language used in the contract differs somewhat from the obligations that New Prime has asserted, or the manner in which New Prime has interpreted the scope of that agreement. However, the Court does not find that it is appropriate at this time, on the basis of the pleadings alone, and without the benefit of any evidence to aid the Court in interpreting the terms of the contract or the parties' intentions or relevant industry parlance, to conclude that New Prime's allegations regarding the contract fail as a matter of law.

The Court's reticence to find that New Prime's allegations fail as a matter of law is in part driven by the parties' mutual failure to address in any meaningful way what the contract actually obligated Midlantic to do with respect to the drop lot project, and the Court's review of the terms of the relatively short contract does not reveal a clear answer to this important issue. Instead, Midlantic has simply argued that New Prime's allegations of breach do not match up with the obligations that the contract has imposed.

The Court recognizes that when the terms of a contract are clear and unambiguous, the intent of the parties to that contract is to be ascertained from the document itself. *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). In other cases, "where there are ambiguities in the contract language, parol evidence may be admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) (citing *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982)). Contractual language will be found to be ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison*, 519 A.2d at 390. Where an ambiguity exists, it presents a question that is not "to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation

when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

In this case, the Court's reading of the contract is not aided by any interpretive guidance offered by the parties, and the contract itself is somewhat ambiguous in terms of what, exactly, Midlantic was obligated to do with respect to the project, and what the scope of its performance was to be. Because these questions are at the heart of New Prime's third-party beneficiary claim, and because the answer to these questions cannot fairly be resolved on the current record, it is recommended that the motion to dismiss the contract claim be denied without prejudice to Midlantic renewing its legal arguments through a motion for summary judgment, where the parties can provide more pointed argument and evidentiary support for their respective interpretations about Midlantic's obligations and performance under its contract with Balchune.

### B. Negligence

New Prime has alternatively alleged that Midlantic was negligent and is liable to New Prime in tort. Under Pennsylvania law, to plead a negligence claim a plaintiff must aver that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach resulted in injury to the plaintiff, and (4) the plaintiff suffered actual loss or damages. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. Super. Ct. 2005). Whether a duty existed

is a question of law for the Court. *Winschel v. Jain*, 925 A.2d 782, 796 (Pa. Super. Ct. 2007).

The Pennsylvania Supreme Court has identified five factors that should be considered in determining whether a duty exists in a particular case, including: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168-69 (Pa. 2000). No single factor is dispositive; instead the factors are to be balanced, and courts are instructed that "[w]hether a duty exists is ultimately a question of fairness." *Campo v. St. Luke's Hosp.*, 755 A.2d 20, 24 (Pa. Super. Ct. 2000); *see also Brandjord v. Hopper*, 688 A.2d 721, 723 (Pa. Super. Ct. 1997) ("Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed resolution.") It is axiomatic that a duty will only be found where "one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *Campo*, 755 A.2d at 24. Additionally, and relevant to this case, "[o]nly when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular

plaintiff." *J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 584 (Pa. Super. Ct. 1997).

At this point, aided only by the plaintiff's allegations, which are accepted as true for purposes of this report and recommendation, and a smattering of legal argument that is better suited to resolution on a more fully developed factual record, the Court finds that the plaintiff has adequately pleaded an alternative cause of action in negligence. The plaintiff's allegations are essentially grounded in claims of misrepresentation and reliance, and that Midlantic knew or should have known that New Prime was relying upon its expertise with respect to analysis of the construction of the drop lot. Midlantic has invited the Court to conclude, as a matter of law, that Pennsylvania would never recognize a duty on these facts – even if true – but Midlantic has not adequately supported that legal assertion, and the Court finds that it would be premature to make such a judgment without the benefit of further evidence that can provide further basis to assess the nature of the relationship between the parties and their dealings to determine, as an initial matter, whether Midlantic owed a legally-recognized duty to New Prime, and if so whether it breached that duty to New Prime's detriment.

## V. **RECOMMENDATION**

The Court previously found that New Prime should be granted leave to file a second amended complaint to include claims against Midlantic for its alleged

17

failures with respect to the construction of the defective drop lot. (Doc. 138.) The Court's finding in this regard was necessarily grounded in its review of the allegations in the then-proposed amended pleading, and the Court found that "it cannot be said that the amended complaint would be futile in that it would be immediately subject to dismissal for failure to state a claim." (*Id.*, p. 10) The Court continues to find that the second amended complaint contains sufficient factual allegations to support alternative claims for breach of contract and negligence.

Having considered Midlantic's motion to dismiss, which is grounded in claims that the specific terms of the contract between Balchune and Midlantic did not create the duties alleged in the second amended complaint, the Court finds that it would be inappropriate to make such a judgment without the benefit of a more complete evidentiary record, which will further aid in interpretation of the contract itself, and the duties imposed thereby.

Likewise, the Court finds that it is too early to decide whether Pennsylvania law would recognize that Midlantic had a duty to New Prime with respect to the construction project, as such an assessment will also turn on factual questions concerning the nature of the relationship between the parties and other factors identified in *Althaus*, *supra*. Resolution of such factual matters will necessarily need to await a more fully developed evidentiary record. Accordingly, IT IS

RECOMMENDED THAT Midlantic's motion to dismiss the second amended complaint (Doc. 160.) be DENIED.

The parties are further advised that:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                 ***/s/ Martin C. Carlson***
                                                 Martin C. Carlson
                                                 United States Magistrate Judge

Dated: April 27, 2017