# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEW PRIME, INC.,

    Plaintiff,

v.

BRANDON BALCHUNE
CONSTRUCTION, INC., POCONO
TRANSCRETE, INC., PATRICK
MCLAINE, P.E., CIVIL DESIGN
PARTNERS, INC., JERRY RANIELI,
SAMUEL J. MARRANCA, SAMUEL J.
MARRANCA GENERAL CONTRACTING
CO., MIDLANTIC ENGINEERING, INC.

    Defendants.

3:14-CR-2410
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

This case concerns the construction of a defective concrete parking lot, for which plaintiff has brought claims against seven defendants, all of whom were contractors or subcontractors for the construction project. Plaintiff has alleged eleven counts for breaches of contract, breaches of implied warranties, and negligence relating to the construction. Presently before the Court are five motions for summary judgment brought by defendants against plaintiff. For sake of clarity, the Court will address each of the five motions in a separate opinion, though the underlying facts of the case remain substantively the same.

This opinion addresses Defendants Samuel J. Marranca and Samuel J. Marranca General Contracting Co. (together "Marranca")'s motion for summary judgment as to (1)

1

plaintiff's breach of contract and negligence claims against Marranca, and (2) Defendant Pocono Transcrete, Inc. ("Pocono")'s crossclaim for contribution against Marranca. Doc. 202.

## II. STATEMENT OF UNDISPUTED FACTS

Marranca has submitted a Statement of Material Facts as to which it argues there is no genuine issue or dispute for trial. Doc. 202-1. Plaintiff has not opposed Marranca's motion, but Pocono has submitted an opposition and a "Counterstatement of Material Facts." Docs. 222, 223. The following facts are not reasonably in dispute. Plaintiff, New Prime, is a corporation that hired various entities to construct a new parking lot (the "Drop Lot") at its facility in Pittston Township. Doc. 223 ¶ 64. Rick Yarborough, a terminal manager at New Prime, worked at the facility in Pittston. *Id.* ¶ 65. One day, Yarborough and some New Prime colleagues went to a restaurant called Café Italia, located near the Prime facility in Pittston, for dinner. *Id.* ¶ 66. Samuel Marranca owns Café Italia as well as Samuel J. Marranca Contracting Co., a company in the construction industry. *Id.* ¶¶ 67, 68. Yarborough described Marranca as "one of those restaurant owners who visits every table in his restaurant." *Id.* ¶ 67; Doc. 223-1 (Deposition Testimony of Yarborough), at 88:9-89:3.

During Yarborough's dinner at Café Italia, Marranca stopped by Yarborough's table and discovered that Yarborough is an employee of New Prime, which was contemplating the construction of "a parking lot for [its] trailers." *Id.* at 89:15-16. Marranca then said: "I have a partner. We do construction. Is the bidding still open? ... How do I bid?" *Id.* at

2

89:17-21. At the dinner, Marranca told Yarborough that his partner was Brandon Balchune. *Id.* at 92:11-14.

Subsequently, Yarborough provided Marranca with the plans for the Drop Lot project and instructions for bid submission. *Id.* at 90:5-9. Thereafter, Defendant Balchune Construction Inc. submitted a bid to New Prime to do construction work for the Drop Lot. Doc. 223-3. In his initial disclosures, Marranca admitted he "assisted Mr. Balchune in negotiating contracts with New Prime, Inc. and that he "also assisted Balchune Construction in locating a job trailer for the site." Doc. 223-4, at 3. Eventually, New Prime awarded the construction project to Balchune in the amount of $1,631,278. Doc. 202-2.

According to Balchune, he entered into an oral agreement with Marranca to share in the profits that would be derived from the Drop Lot construction should he win the bid. Doc. 206 at 6. Specifically, profits would be calculated as costs of labor, material, and overhead subtracted from total revenues; and one third of the resulting profits would go to Marranca. *Id.* Balchune recalled that Marranca eventually received over a hundred thousand dollars for the project. *Id.* Marranca, however, had a different recollection at deposition, and recalled that under the oral agreement, he was only to receive 10 or 12 percent of the profits. Doc. 223-2, at 38:5-6. During the Project, every time Balchune received a payment from Prime, it would share the proceeds of the payment with Marranca. *Id.* at 40:21-24. Marranca characterized this compensation as a "finder's fee or consulting fee," which was "percentage of whatever money was made." *Id.* at 36:12-37:25.

3

Balchune also testified that Marranca assisted with negotiations with New Prime on "what the project was going to entail and what [New Prime] expected." Doc. 206, at 5. According to Marranca, he and Balchune have had a business relationship for about 10 to15 years. Doc. 223-2, at 21:17. Marranca located certain other vendors for Balchune, including vendors for fencing or guardrails for the Drop Lot. *Id.* at 37:13-17. He testified he did so because he is "from the area, [he] know[s] a lot of people. [He's in business, and if [he] got a better price, it worked." *Id.* at 43:24-44:2. Moreover, Marranca paid at least one vendor, Wilkes Barre Clay, directly from his own funds and was subsequently reimbursed by Balchune. *Id.* at 39:4-21. While construction was ongoing, Marranca was present at the Drop Lot construction site approximately three times. *Id.* at 26:18-27:7. Since the construction of the Drop Lot completed, New Prime has brought suit against various contractors or subcontractors for the Drop Lot project, including Balchune and Marranca, alleging that they breached a contract by constructing a defective Drop Lot. Doc. 156. Notably, while Balchune has a direct contractual relationship with New Prime, the record does not reflect that Marranca had such a relationship with New Prime or the other defendants. Doc. 202-1 ¶ 1.

### III. Procedural History

On December 22, 2014, New Prime filed its original complaint naming Balchune and Pocono as defendants. Doc. 1. On August 10, 2015, New Prime filed an Amended Complaint adding Patrick McLaine, Civil Design Partners, Jerry Ranieli, Samuel J.

Marranca, and Samuel J. Marranca General Contracting Company as defendants. Doc. 36.[1] On July 13, 2016, New Prime filed the Second Amended Complaint (which is the operative complaint for this motion), adding Midlantic as a defendant. Doc. 156.

The Second Amended Complaint contains eleven counts as follows: Count I (Breach of Contract as against Balchune); Count II (Breach of Warranty as against Balchune); Count III (Breach of Warranty as against Pocono); Count IV (Breach of Contract as against Patrick McLaine and Civil Design Partners); Count V (Breach of Warranty as against Patrick McLaine and Civil Design Partners); Count VI (Breach of Contract as against Jerry Ranieli); Count VII (Negligence as against Jerry Ranieli); Count VIII (Breach of Contract as against Marranca; Count IX (Negligence as against Marranca); Count X (Breach of Contract as against Midlantic); and Count XI (Negligence as against Midlantic). *Id.* After the parties engaged in discovery, all defendants except Ranieli have filed motions for summary judgment. In total, there are five pending motions for summary judgment before the Court—brought by Pocono (Doc. 215), McLaine and Civil Design (Doc. 219), Balchune (Doc. 217), the Marranca Defendants (Doc. 202), and Midlantic (Doc. 210).

To make matters more complicated, all defendants (with the exception of Jerry Ranieli) have filed crossclaims against other defendants in this case. *See* Docs. 161 (Pocono's Answer and Crossclaims), 200 (Midlantic's Answer and Crossclaim), 201

---

[1] On the same day, Balchune filed a "Joinder Complaint" against Midlantic. Doc. 37. The Joinder Complaint was dismissed on May 5, 2017 following New Prime's addition of Midlantic as a named defendant.

(Marranca Defendants' Answer and Crossclaims), 212 (Balchune's Answer and Crossclaims), 224 (McLaine Defendants' Answer and Crossclaims). The McLaine Defendants have since dropped their crossclaims. *See e.g.* Doc. 265 at 1(stating that "[a]fter analysis, CDP and McLaine do not believe they have valid crossclaims against any defendant, and hereby withdraw them").

None of the crossclaims allege specifically allege any acts or omissions that could support of a finding of breach of contractual duties, breach of other legal obligations, or breach of any duties sounding in tort. *See e.g.* Doc. 200, at 16-17 (Midlantic's crossclaim alleging only that if Plaintiff sustained damages, then all other defendants "are primarily liable" and "are liable to Midlantic [] by way of contribution and/or indemnity."); Doc. 201, ¶¶ 130, 132 (Marranca Defendants' crossclaim alleging that "to the extent that there are defects or deficiencies in the concrete at the Drop Lot, such were caused by the acts and omission of one or all of the other Defendants..." and that they are "entitled to contribution" from other defendants); Doc. 212, at 11-12 (Balchune's crossclaim alleging that to the extent New Prime suffered damages, "said damages were not caused by any act or omission of Balchune and, instead, were caused by [other defendants]," who are liable to Balchune "for contribution and/or indemnity"); Doc. 161, at 16-17 (Pocono's crossclaim alleging that "to the extent there are defects or deficiencies in the concrete at the Drop Lot, such defects or deficiencies were caused by the actions of one or all of the other

6

Defendants," and that "Pocono is entitled to contribution from [all other Defendants] for any damages assessed against Pocono").

The present opinion concerns Marranca's motion for summary judgment, arguing that Marranca was not in a "joint venture" or partnership with Balchune such that he may be liable for breach of contract or negligence to New Prime, and that the crossclaims for contribution or indemnity brought by other Defendants against Marranca must be dismissed. Doc. 202, at 7-11. Notably, Marranca did *not* move for summary judgment on his own crossclaims against other defendants.[2] While New Prime has not opposed Marranca's motion, Pocono has filed an opposition, arguing that Marranca cannot be dismissed from the case because whether Marranca was in a joint venture with Balchune remains an issue of fact. Doc. 222. For reasons stated below, the Court will deny Marranca's motion for summary judgment on New Prime's claims, and grant the motion for summary judgment on Pocono's crossclaim against Marranca.

### III. STANDARDS OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality,

---

[2] The McLaine Defendants also filed an opposition to the instant motion, arguing only that Pocono's crossclaim against them should be dismissed. Doc. 263, at 4 (presenting the relevant issue as "Whether Marranca has a valid crossclaim against CDP and/or McLaine" and suggesting an answer in the negative). However, Marranca has not moved on its crossclaims against other defendants. He only argues that other defendants' crossclaims against himself should be dismissed. Since Marranca's crossclaims against other defendants are not addressed in its opening brief, they cannot be properly resolved on the instant motion, which has provided no notice to any of the crossclaim-defendants that they had a duty to respond. Thus, the Court need not address McLaine's opposition brief.

7

...[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW,*

Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Id. (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

### I. New Prime's Claims Against Marranca

The Second Amended Complaint alleges two claims against Marranca—breach of contract and negligence. Doc. 156, Counts VIII, IX. New Prime has not opposed Marranca's motion for summary judgment to dismiss these claims. However, co-defendant Pocono, has opposed Marranca's motion. This Court has adopted the principle that "co-defendant[s] opposing summary judgment had no standing to file an opposition to summary judgment where plaintiff had not done so and the co-defendant had no pending cross-

9

claims." *Metcalf v. Pierce*, No. 4:11-CV-0127, 2013 WL 3322357, at *2 (M.D. Pa. July 1, 2013). *See also Residences at Bay Point Condo. Ass'n. v. Standard Fire Ins.*, 2013 WL 6252692, at *7 (D.N.J. Dec. 4, 2013) (adopting other courts' rulings that a "codefendant without any pending cross-claims lacked standing to oppose the defendant's motion for summary judgment when the plaintiff did not oppose the motion"). In this case, although Pocono has a pending crossclaim for contribution against Marranca, it does not brief the issue of its crossclaim. Instead, Pocono attempts to step in the shoes of New Prime and opposes the dismissal of *New Prime's* claims against Marranca. Doc. 222. Since the plaintiff has not opposed the instant summary judgment motion, Pocono has no standing to file an opposition.

Nevertheless, New Prime's lack of opposition does not relieve the Court of its responsibilities in a summary judgment motion. "[W]here a movant has the burden of proof and a non-movant does not respond to a motion at all, a district court must still find that summary judgment is 'appropriate' under FRCP 56(c) by determining 'that the facts specified in or connection with the motion entitle the moving party to judgment as a matter of law.'" *Hitchens v. City of Montgomery*, 98 F. App'x 106, 110 (3d Cir. 2004) (internal citations omitted). The Court will therefore determine, based on the record before it, the merits of Marranca's motion.

Marranca argues that he should be dismissed from the case because he cannot be said to be in a partnership or joint venture with Balchune. Doc. 207, at 5-12. Of the two

10

counts alleged in the Complaint against Marranca, both appear to be premised on the existence of a partnership or a joint venture between Marranca and Balchune, since there is no alleged contractual relationship between New Prime and Marranca. "A partner or member of a joint venture is vicariously liable for the actions of any other partner or co-venturer within the scope of the enterprise." *Energy Marine Servs. v. DB Mobility Logistics AG*, 2016 WL 284432, at *4 (D. Del. Jan. 22, 2016) (internal citation omitted); *see also United States v. USX Corp.*, 68 F.3d 811, 827 (3d Cir. 1995) ("Each member of a joint venture is considered the agent of the others, so that the act of any member within the scope of the enterprise is charged vicariously against the rest") (internal citation omitted).

In Pennsylvania, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." 15 Pa. C. S. § 8422. This Court has said that to determine if a partnership exists, there must be "clear, mutual assent on the part of two or more persons" to form a partnership. *Leprino Foods Co. v. Gress Poultry, Inc.*, 379 F. Supp. 2d 650, 655 (M.D. Pa. 2005). "A written agreement is not necessary to establish a partnership; its existence may be implied from a consideration of all the attending facts and circumstances." *Abel v. Am. Art Analog, Inc.*, 838 F.2d 691, 696 (3d Cir. 1988). Under 15 Pa. C. S. § 8422, "[a] person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment…(ii) for services as an independent contractor or of wages or other compensation to an employee." 15 Pa. C. S. § 8422(c).

Marranca does not dispute that he received a share of the profits. Doc. 223-2, at 38:5-6. Instead, he argues that he is an "independent contractor," thus the presumption of partnership does not apply to him. Doc. 207, at 8-9. In support, Marranca points to Balchune's deposition testimony, which shows Balchune agreeing with the proposition that Marranca was an independent contractor:

> Q. Was Mr. Marranca paid as an employee of [Balchune Construction] --
> A. No.
> Q. Independent contractor?
> A. Independent contractor.

Doc. 206, at 6. However, this testimony, at most, shows Balchune's personal view as to his relationship with Marranca. It is true that "[t]estimony coming directly from purported partners in the alleged partnership may, under some circumstances, be sufficient to prove the *existence* of a partnership, so long as those verbal representations evidence the clear, mutual assent necessary under Pennsylvania law." *Knit With v. Knitting Fever, Inc.*, 742 F. Supp. 2d 568, 580 (E.D. Pa. 2010) (internal citations omitted) (emphasis added). However, Marranca is attempting to prove the opposite—that is, the fact that a partnership has *not* formed. It is hardly conclusive from this single line of testimony that Marranca and Balchune had mutually assented to *not* form a partnership. Furthermore, New Prime's employee, Yarborough, testified that when they first met, Marranca told him and his New Prime colleagues that Brandon Balchune was his partner, saying: "I have a partner. We do construction. Is the bidding still open? ... How do I bid?" Doc. 223-1, at 89:17-19. *See also Id.* at 92:11-14 ("Q. Did Marranca tell you at that dinner that the

12

partner, so-called partner, was Balchune? A. He did.") Given the conflicting parol evidence, the Court cannot conclusively conclude that a partnership did *not* exist as a matter of fact and law. *Abel*, 838 F.2d at 696 ("Under Pennsylvania law, the existence of a partnership is a question of fact").

Furthermore, Marranca has not established basic factors that would indicate he is Balchune's independent contractor. "In ascertaining whether a person is an employee or an independent contractor, the basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged." *Wilson v. IESI N.Y. Corp.*, 444 F. Supp. 2d 298, 313-14 (M.D. Pa. 2006) (citing *Green v. Independent Oil*, 201 A.2d 207, 210 (Pa. 1964)). As is the case with partnerships, the determination of whether a person is an independent contractor is a factually intensive one. The Court may look to several factors, including

> [c]ontrol of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Universal Am-Can, Ltd. v. Workers' Compensation Appeal Bd.*, 762 A.2d 328, 333 (Pa. 2000) (internal citation omitted). "Whether some or all of these factors exist in any given situation is not controlling." *Id.* "If the facts as to such relationship are in dispute, it is the function of a jury to determine the precise nature of the relationship between the parties."

*Independent Oil*, 201 A.2d at 210. "However, where the facts are not in dispute, the question of the relationship becomes one for determination by the court." *Id.*

Here, the evidence raises disputed issues of fact regarding whether Marranca was a partner or an independent contractor of Balchune. Their agreement is oral only, thus the Court must resort to reliance on extrinsic evidence. While Balchune testified that Marranca did not have "any supervisory control over any of the work performed by Balchune on this project," Doc. 206, at 13, it is equally clear that Marranca had influence over the selection of vendors and materials in the project, such as a clay supplier, a job trailer for the site, and fencing and guardrail materials. Doc. 206, at 5-6, Doc. 223-2, at 43:24-44:2, Doc. 223-4, at 3. He also had supervisory capacity to contract with and pay for a vendor with his own funds, and subsequently received reimbursement from Balchune. Doc. 223-2, at 39:4-21. Balchune's payment to Marranca was not correlated with Marranca's time or effort spent on the project, but with how much profit Balchune was to make from the overall Drop Lot project. Doc. 206 at 6. Finally, Marranca himself admitted he visited the construction site at least three times during the period of construction. Doc. 223-2, at 26:18-27:7. These activities are arguably ancillary to the core responsibilities of the construction, the bulk of which was performed by Balchune without input from Marranca. But this is not a question the Court may answer in lieu of a jury, especially given the profit-sharing scheme of the two parties' compensation. Absent clear evidence of the parties' mutual assent at the time they

began working on the Drop Lot project, the Court cannot conclusively find that a partnership did not exist—that determination is best left for a jury, not the Court, to evaluate.

Similarly, the test for joint venture is equally fact intensive. Pennsylvania courts look to certain essential factors to the creation of a joint venture:

1. Contribution to the joint venture by each member, which can be services skills, knowledge materials or money;
2. Sharing of profits among the parties;
3. A joint proprietary interest and right of mutual control over the subject matter of the enterprise; and
4. Usually, a single business transaction rather than a general and continuous transaction.

*Streamline Bus. Servs., LLC v. Vidible, Inc.*, 2015 WL 3477675, at *3 (E.D. Pa. June 2, 2015) (citing *McRoberts v. Phelps*, 138 A.2d 439, 443-44 (Pa.1958)). "The existence or non-existence of a joint venture depends on the facts and circumstances of each particular case and no fixed and fast rule can be promulgated to apply generally to all situations." *McRoberts*, 138 A.2d at 444. In *Streamline*, the court found that plaintiff "has sufficiently alleged the intent to form a joint venture" despite the lack of "any specific agreement between the parties," since the plaintiff alleged the existence of an oral contract, the fact that "both parties contributed to the alleged joint venture"; the fact "that the parties agreed to share profits"; the fact that the parties had "joint control"; and the fact that the joint venture related "to a single business transaction." *Streamline*, 2015 WL 3477675, at *6.

For essentially the same reasons that the Court cannot conclude whether a partnership existed, it cannot find, at this stage of the litigation, whether a joint venture was

created between Balchune and Marranca. As stated above, there is evidence that the two parties agreed to share in profits, a factor that would suggest the existence of a joint venture. It is also undisputed that the two parties had a specific relationship that related to "a single business transaction," i.e. the Drop Lot construction. But whether Marranca contributed to or exerted control over the Drop Lot project—and to what extent—is to be resolved at trial, especially when the deposition testimony cited by the parties is hardly dispositive on this subject. "Where, as here, the facts permit competing inferences concerning the existence of an agreement to form a joint venture, the issue must be submitted to the fact finder." *USX Corp.*, 68 F.3d at 827.

## II. Marranca's Motion on Pocono's Crossclaims

In addition to moving for summary judgment on New Prime's claims, Marranca also argues (in a conclusory fashion) that "there has been no evidence or testimony presented to support the cross-claim of the Pocono Transcrete Defendants to establish any theory of contribution or indemnity on the part of Marranca." Doc. 207, at 13. Marranca claims that because Pocono opposes his motion for summary judgment, Pocono "bears the burden of proof regarding their cross claim for contribution against Marranca." *Id.* at 6. This is nonsensical. As the movant in the instant motion, it is Marranca who bears the burden of "showing that there is no genuine issue of material fact and that it is entitled to summary judgment on [co-defendant's] cross-claims and the plaintiffs' claims." *Weiss v. Advest, Inc.*, 607 F. Supp. 799, 803 (E.D. Pa. 1984). *See also Celotex Corp.*, 477 U.S. at 323, 106 S. Ct.

16

at 2553 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact"). Marranca's improper burden-shifting notwithstanding, the Court will dismiss Pocono's crossclaim against Marranca for contribution because Pocono is not a joint tortfeasor.

Pocono has conclusorily alleged that "to the extent there are defects or deficiencies in the concrete at the Drop Lot, such defects or deficiencies were caused by the actions of one or all of the other Defendants," and that "Pocono is entitled to contribution from [all other Defendants] for any damages assessed against Pocono". Doc. 161, at 16-17. In Pennsylvania, contribution is a fault-sharing mechanism only available between joint tortfeasors. 42 Pa.C.S. § 8324. "The right of contribution under Pennsylvania law is governed by the Pennsylvania Uniform Contribution Among Tortfeasors Act." *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016) (citing 42 Pa. C.S. §§ 8322-8327). The Act defines joint tortfeasors as "two or more persons jointly or severally liable *in tort* for the same injury to persons or property." *Id.* (citing 42 Pa. C.S. § 8322) (emphasis in original). Thus, "[t]he right to contribution *only* arises among joint tortfeasors." *Bank v. City of Philadelphia.*, 991 F. Supp. 2d 523, 538 (E.D. Pa. 2014) (emphasis in original). *Cf. Harmelin v. Man Fin., Inc.*, 2007 WL 3085867, at *2 (E.D. Pa. Oct. 17, 2007) ("Contribution is only proper as to joint tortfeasors").

Pocono is not alleged to be a tortfeasor in the Second Amended Complaint—instead, it is only accused of breach of warranty. Nor has any other defendant alleged that Pocono is a tortfeasor. Instead, each defendant has only conclusorily alleged that Pocono is liable to them by contribution and/or indemnity, without specifically alleging any tortious conduct on Pocono's part. *See e.g.* Doc. 200, at 16-17; Doc. 201, ¶¶ 130, 132; Doc. 212, at 11-12. In addition, neither Marranca nor Pocono's brief in this motion argues that Pocono and Marranca are "joint tortfeasors," such that they may share in contribution liability. Therefore, Marranca cannot be liable for contribution to Pocono. *Bank*, 991 F. Supp. 2d at 538 (dismissing crossclaim for contribution because "[n]owhere in its crossclaim does Century Motors allege that it and the Foster Defendants are joint tortfeasors"); *Nat'l Specialty Ins. Co. v. Tunkhannock Auto Mart, Inc.*, 2017 WL 661475, at *5 (M.D. Pa. Feb. 17, 2017) (dismissing Plaintiffs' claim for contribution "[b]ecause Plaintiffs' Complaint fails to allege a joint tortfeasor relationship with [defendant]").

## V. Conclusion

For the reasons outlined above, Marranca's motion for summary judgment (Doc. 215) will be denied in part and granted in part. A separate Order will follow.

Robert D. Mariani
United States District Judge

18