THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEW PRIME, INC.,                          :
                                          :
            Plaintiff,                    :
                                          :     3:14-CR-2410
      v.                                  :     (JUDGE MARIANI)
                                          :
BRANDON BALCHUNE                          :
CONSTRUCTION, INC., POCONO                :
TRANSCRETE, INC., PATRICK                 :
MCLAINE, P.E., CIVIL DESIGN               :
PARTNERS, INC., JERRY RANIELI,            :
SAMUEL J. MARRANCA, SAMUEL J.             :
MARRANCA GENERAL CONTRACTING              :
CO., MIDLANTIC ENGINEERING, INC.          :
                                          :
            Defendants.                   :

## MEMORANDUM OPINION

### I. INTRODUCTION

This case concerns the construction of a defective concrete parking lot, for which

plaintiff has brought claims against seven defendants, all of whom were contractors or

subcontractors for the construction project. Plaintiff has alleged eleven counts for breaches

of contract, breaches of implied warranties, and negligence relating to the construction.

Presently before the Court are five motions for summary judgment brought by defendants

against plaintiff. For sake of clarity, the Court will address each of the five motions in a

separate opinion, though the underlying facts of the case remain substantively the same.

1

This opinion addresses Defendant Pocono Transcrete Inc. ("Pocono")'s motion for summary judgment as to (1) plaintiff's breach of implied warranty claim against Pocono, and (2) other defendants' crossclaims for contribution or indemnity against Pocono. Doc. 215.

## II. STATEMENT OF UNDISPUTED FACTS

Pocono has submitted a Statement of Material Facts as to which it argues there is no genuine issue or dispute for trial. Doc. 216. Plaintiff submitted an opposition to the motion and an answer to Pocono's Statement of Facts. Docs. 285, 286. Co-defendants McLaine and Civil Design have also filed an opposition to the motion, as well as an answer to Pocono's Statement of Facts. Docs. 264, 265. The following facts have been admitted except as noted.

Plaintiff, New Prime, is a corporation that hired various entities to construct a new parking lot over 200,000 square feet in size (the "Drop Lot"). Doc. 216 ¶ 2. A "drop lot" is a type of parking lot where tractor-trailer drivers can disconnect and park (or "drop") their trailers and drive the tractor unit away. *Id.* ¶ 4. In May 2012, New Prime hired Defendants Patrick McLaine and Civil Design Partners, Inc. (together the "McLaine Defendants") to prepare plans and other documents related to the Drop Lot construction. *Id.* ¶ 1. The McLaine Defendants denied that they were asked to "produce construction specifications for the drop lot," instead, they state that they were only hired to "obtain governmental permits and approvals in connection with which [Civil Design] produced a 'Land Development Plan.'" Doc. 264 ¶ 1. It is undisputed however, that the McLaine Defendants were hired by New

2

Prime to produce certain development plans for the Drop Lot project.

In August 2012, New Prime entered into a contract with Brandon Balchune Construction, Inc. ("Balchune"), a construction company, as the primary construction contractor for the Drop Lot. Doc. 216 ¶ 2. Balchune, in turn, hired several subcontractors for the project, including Defendant Jerry Ranieli to serve as the site superintendent and Defendant Midlantic Engineering, Inc. ("Midlantic") to perform geotechnical inspection and quality control services during the construction. Id. ¶¶ 5, 6. Balchune also hired Defendants Samuel Marranca and Samuel J. Marranca General Contracting Co. (together the "Marranca Defendants") to serve as the Site Manager for the project. Id. ¶ 5.[1]

Balchune hired Pocono to manufacture and supply the concrete for the project. Id. ¶¶ 7, 37. Pocono and Balchune did not enter into a formal contract. Id. ¶¶ 37-39. Instead, Pocono submitted a one page price quote to Balchune to provide concrete for a price of $72 per yard, which Balchune accepted. Id. ¶¶ 37-38; Doc. 216-6. Pocono contends (and no opposing party disputes) that this price quote "serves as the contract between Balchune and Pocono." Id. ¶ 39. The quote states that Pocono was to supply Balchune with "Class A PennDOT equivalent" concrete. Doc. 216-6. It does not contain an indemnification provision. Doc. 216 ¶ 40; Doc. 216-6. Neither New Prime nor the other Defendants in this case have a contract with Pocono. Id. ¶ 41.

---

[1] Though the McLaine Defendants deny Marranca's role during construction, Doc. 264 ¶ 5, they have given no reason for the denial or provided a record citation that would support the denial. The denial is improper and the fact is deemed admitted. See M.D.Pa. Local Rule 56.1. In any event, the exact scope of Marranca's role is irrelevant for the purposes of this motion.

Construction of the Drop Lot began in September 2012, and the project was completed around February 2013. *Id.* ¶ 8. After construction was completed, an inspection revealed that 60% of the concrete surface of the Drop Lot began to crack and peel. *Id.* ¶ 9. New Prime then brought suit against various contractors or subcontractors for the Drop Lot project, alleging that all defendants contributed to the Drop Lot's defects. Doc. 1.

New Prime has mustered two experts in support of its suit: Farshad Rajabipour, a civil engineer and expert in forensics of concrete, and Otto Guedelhoefer, a structural engineer. *Id.* ¶ 10. New Prime's experts have posited several theories in which defendants could have contributed to the premature failure of the concrete surface. *Id.* ¶¶ 15-36. For example, Rajabipour testified that the concrete supplied by Pocono had an excessive water-to-cement ratio. *Id.* ¶ 15. He also opined that Balchune engaged in improper installation, finishing, and curing practices during construction, and that Balchune failed to recognize problems with the concrete in time to fix them. *Id.* ¶¶ 12, 15. Similarly, Guedelhoefer opined that Balchune had installed a significant portion of the concrete slab for the Drop Lot with insufficient thickness. *Id.* ¶ 16. He explained that concrete industry standards require a "subbase" layer beneath the concrete consisting of at least four inches of Type 2A aggregate (a type of gravel), and that about 10% of the subbase in the Drop Lot did not meet this standard. *Id.* ¶¶ 17-18.

The two experts further pointed out there were other problems with Balchune's construction, including the failure to include a joint installed in the concrete, the failure to

4

make cuts in certain areas in the concrete, the improper usage of trowels to finish the concrete, and the failure to allow water to evaporate properly before finishing the concrete. *Id.* ¶¶ 19-21, 26. Rajabipour also took issue with the infrequency of Midlantic's quality control testing of the concrete. *Id.* ¶¶ 28-30. Finally, Rajabipour found that Civil Design did not specify the required quality of concrete in its plans for the Drop Lot. *Id.* ¶ 32; Doc. 216-1, at 21.

With respect to the concrete supplied by Pocono, both experts took issue with the type of concrete used for the Drop Lot, opining that a better quality type of concrete would have resulted in better performance. *Id.* ¶ 33; Doc. 216-1, at 13. In addition, Rajabipour found that notwithstanding the fact that PennDOT Class A concrete is an inappropriate choice for the project, the concrete that was *in fact* delivered by Pocono "did not even meet the requirements of the PennDOT Class A concrete, due to its high [water to cement ratio], low cement content, addition of extra water (up to 25 gal) at the job site by Pocono drivers, and the low 7-day compressive strength of the concrete." Doc. 216-1, at 13. In short, New Prime's experts have identified several potential factors caused by the various defendants that contributed to its injury, at least some of which are attributable to Pocono. With respect to overall damages, Guedelhoefer estimated the cost of remediation to be around 4.5 to 5.3 million dollars. Doc. 216-2, at 15-17.

## III. PROCEDURAL HISTORY

5

On December 22, 2014, New Prime filed its original complaint naming Balchune and Pocono as defendants. Doc. 1. On August 10, 2015, New Prime filed an Amended Complaint adding Patrick McLaine, Civil Design Partners, Jerry Ranieli, Samuel J. Marranca, and Samuel J. Marranca General Contracting Company as defendants. Doc. 36.[2] On July 13, 2016, New Prime filed the Second Amended Complaint (which is the operative complaint for this motion), adding Midlantic as a defendant. Doc. 156.

The Second Amended Complaint contains eleven counts as follows: Count I (Breach of Contract as against Balchune); Count II (Breach of Warranty as against Balchune); Count III (Breach of Warranty as against Pocono); Count IV (Breach of Contract as against Patrick McLaine and Civil Design Partners); Count V (Breach of Warranty as against Patrick McLaine and Civil Design Partners); Count VI (Breach of Contract as against Jerry Ranieli); Count VII (Negligence as against Jerry Ranieli); Count VIII (Breach of Contract as against the Marranca Defendants; Count IX (Negligence as against the Marranca Defendants); Count X (Breach of Contract as against Midlantic); and Count XI (Negligence as against Midlantic). Id. After the parties engaged in discovery, all defendants except Ranieli have filed motions for summary judgment. In total, there are five pending motions for summary judgment before the Court—brought by Pocono (Doc. 215), McLaine and Civil Design (Doc. 219), Balchune (Doc. 217), the Marranca Defendants (Doc. 202), and Midlantic (Doc. 210).

---

[2] On the same day, Balchune filed a "Joinder Complaint" against Midlantic. Doc. 37. The Joinder Complaint was dismissed on May 5, 2017 following New Prime's addition of Midlantic as a named defendant.

To make matters more complicated, all defendants (with the exception of Jerry Ranieli) have filed crossclaims against other defendants in this case. *See* Docs. 161 (Pocono's Answer and Crossclaims), 200 (Midlantic's Answer and Crossclaim), 201 (the Marranca Defendants' Answer and Crossclaims), 212 (Balchune's Answer and Crossclaims), 224 (McLaine Defendants' Answer and Crossclaims). The McLaine Defendants have since dropped their crossclaims. *See e.g.* Doc. 265 at 1(stating that "[a]fter analysis, CDP and McLaine do not believe they have valid crossclaims against any defendant, and hereby withdraw them").

None of the crossclaims allege specifically allege any acts or omissions that could support of a finding of breach of contractual duties, breach of other legal obligations, or breach of any duties sounding in tort. *See e.g.* Doc. 200, at 16-17 (Midlantic's crossclaim alleging only that if Plaintiff sustained damages, then all other defendants "are primarily liable" and "are liable to Midlantic [] by way of contribution and/or indemnity."); Doc. 201, ¶¶ 130, 132 (Marranca Defendants' crossclaim alleging that "to the extent that there are defects or deficiencies in the concrete at the Drop Lot, such were caused by the acts and omission of one or all of the other Defendants..." and that they are "entitled to contribution" from other defendants); Doc. 212, at 11-12 (Balchune's crossclaim alleging that to the extent New Prime suffered damages, "said damages were not caused by any act or omission of Balchune and, instead, were caused by [other defendants]," who are liable to Balchune "for contribution and/or indemnity").

The present opinion concerns Pocono's motion for summary judgment. Prior to filing its motion, Pocono filed an answer to the Second Amended Complaint on December 22, 2016, essentially disputing that "the concrete Pocono supplied to the Project was defective and/or failed to conform to agreed-upon standards and requirements," and averring that "[i]f the concrete is proven to be deficient or defective, it is not due to the fault or neglect of Pocono." Doc. 161 at 8. Pocono further denied that it "made or breached any warranty to New Prime or any other party to this litigation." *Id.* at 11. Like the other defendants, Pocono has filed crossclaims as well, which suffer from the same lack of specificity problems. Pocono styled its crossclaims as a claim against all other defendants "for contribution." Doc. 161, at 15. Instead of alleging facts that could support contribution liability, Pocono merely states that "to the extent there are defects or deficiencies in the concrete at the Drop Lot, such defects or deficiencies were caused by the actions of one or all of the other Defendants," that "Pocono is entitled to contribution from [all other Defendants] for any damages assessed against Pocono," and that "if Pocono is found to be liable to New Prime for any damages, then [the other defendants] are liable over to Pocono, are solely liable to New Prime, or are jointly and severally liable to New Prime for such damages." *Id.* at 17. Pocono does not allege any specific acts by other defendants that could support a crossclaim for contribution, i.e. Pocono does not allege that other defendants have breached any contractual, tortious, or legal duties that are owed to Pocono, such that they are liable to it.

On July 7, 2017, Pocono filed its motion for summary judgment. Doc. 215. Though Pocono has styled its papers as a singular motion, the Court discerns two separate motions from Pocono's motion papers—the first, for summary judgment as to Plaintiff's claim against Pocono for breach of implied warranty, and the second, for summary judgment as to the "other Defendants' crossclaims against Pocono." Doc. 230, at 16. Notably, Pocono did *not* move for summary judgment on its own crossclaims against other defendants.[3] For reasons stated below, the Court will deny Pocono's motion for summary judgment on New Prime's claim, and grant the motion for summary judgment on the other defendants' crossclaims against Pocono.

## III. STANDARDS OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, ...[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

---

[3] The McLaine Defendants filed an opposition to the instant motion, arguing only that Pocono's crossclaim against them should be dismissed. Doc. 265, at 4 (presenting the relevant issue as "Whether Pocono Transcrete, Inc. has a valid crossclaim against CDP and/or McLaine" and suggesting an answer in the negative). But Pocono has not moved on its crossclaims against other defendants. Pocono only argues that other defendants' crossclaims against *itself* should be dismissed. Since Pocono's crossclaims against other defendants are not addressed in its opening brief, they cannot be properly resolved on the instant motion, which has provided no notice to any of the crossclaim-defendants that they had a duty to respond. Thus, the Court need not address McLaine's opposition brief.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127

10

S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary

judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no *genuine* issue of
> *material* fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

### I.    New Prime's Breach of Warranty Claim Against Pocono

Of the eleven causes of actions in the Second Amended Complaint, New Prime has

brought only one claim against Pocono—breach of implied warranty, based on allegations

that the concrete supplied by Pocono is defective. Doc. 156, Count III. There are two types

of implied warranties: the warranty of merchantability and the warranty of fitness. The

Second Amended Complaint does not specify which type of implied warranty Pocono

allegedly breached, though the standard is the same for both. "To establish a breach of

either warranty, plaintiffs must show that the equipment they purchased from defendant was

defective." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).

Both the implied warranties "are designed to protect the buyer of goods from bearing the

burden of loss where merchandise, though not violating a promise expressly guaranteed,

11

does not conform to the normal commercial standards or meeting the buyer's particular purpose, a condition upon which he had the right to rely." *Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 849 (3d Cir. 1967). "To survive summary judgment, a plaintiff who admits that the product functioned properly in the past must present some evidence explaining how the product could be defective when it left the manufacturer's control." *Varner v. MHS, Ltd.*, 2 F. Supp. 3d 584, 593 (M.D. Pa. 2014).

Pocono's brief does not dispute the allegation that its concrete may have been defective when it left Pocono's control. Instead, it argues that summary judgment is warranted because New Prime failed to establish the "absence of other reasonable secondary causes" for the defective Drop Lot concrete surface. Doc. 230, at 12 (citing *Altronics*, 957 F.2d at 1105). It claims that because New Prime "attribute[s] fault to virtually everybody who was involved in the project," the claim against Pocono must fail because New Prime has not eliminated other causes of the concrete surface failure. *Id.* at 5.

At the outset, the Court notes that Pocono's argument defies common sense. If every plaintiff must prove that there are no other secondary causes for plaintiff's ultimate injury before holding a certain contractor responsible, then every case that involves multiple contractors and subcontractors (a regular occurrence in construction projects) would be dismissed if more than one of them contributed to plaintiff's injury. Pocono confuses the overall injury suffered by New Prime (a defective Drop Lot) with the specific claim against it. New Prime does not allege that Pocono is wholly responsible for the overall defects of the

Drop Lot concrete surface, but rather, that the *product as supplied by Pocono*, i.e. its

concrete, was defective when it left Pocono's control. Allegations regarding the faulty

construction practices of Balchune and other defendants, whether true or not, are not

pertinent to the implied warranties of Pocono's concrete.

Moreover, Pocono misinterprets the reasoning of *Altronics*. *Altronics* does not stand

for the broad proposition that a plaintiff must prove the absence of other reasonable

secondary causes in *all* breach of warranty cases in order to survive summary judgment.

The relevant paragraph begins with the proposition that the rule applies to the use of

circumstantial evidence only:

> One way to demonstrate a defect is by the submission of circumstantial evidence. Under Pennsylvania law a product may be found defective if it functioned improperly in the absence of abnormal use and reasonable secondary causes. We believe that plaintiffs were required to shoulder the burden not only of demonstrating a malfunction, but of negating abnormal use and other causes. Therefore, in order to carry their burden plaintiffs were required to show: (1) that the product malfunctioned; (2) that plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes.

*Altronics*, 957 F.2d at 1105 (internal citations omitted). Cases that have since cited

*Altronics* have taken the sensible position that plaintiffs only have the burden of proving the

absence of secondary causes where it is relying solely upon circumstantial evidence. *See*

*e.g. Kruger v. Subaru of Am., Inc.*, 996 F. Supp. 451, 454 (E.D. Pa. 1998) ("Under

Pennsylvania law, in order to prove a breach of warranty, a party must prove, either by

direct or circumstantial evidence, that the product was defective. If a party chooses to prove

13

the defect by circumstantial evidence, it must negate abnormal use and reasonable secondary causes") (citing *Altronics*, 957 F.2d at 1105); *Hoffman v. Paper Converting Mach. Co.*, 694 F. Supp. 2d 359, 373 (E.D. Pa. 2010) ("When a plaintiff relies upon circumstantial evidence that the product is defective for the purposes of the implied warranty of merchantability, he must do more than merely prove a defect. Plaintiff must further negate abnormal use and reasonable secondary causes") (citing *Altronics*, 957 F.2d at 1105); *Kotsur v. Goodman Glob., Inc.*, 2016 WL 4430609, at *4 (E.D. Pa. Aug. 22, 2016) ("Plaintiffs who allege *only* circumstantial evidence of a defect must prove three elements: (1) that the product malfunctioned; (2) that [they] used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes") (citing *Altronics*, 957 F.2d at 1105) (emphasis added); *Zollars v. Troy-Built, LLC*, 2011 WL 7102573, at *5 (W.D. Pa. Dec. 21, 2011) ("If a plaintiff is relying upon circumstantial evidence that the product is defective, in addition to proving the product's failings, he must further negate abnormal use and reasonable secondary causes"), *adopted*, 2012 WL 253176 (W.D. Pa. Jan. 26, 2012). Thus, it is clear that the absence of other secondary causes rule (which is sometimes called the "malfunction theory") only applies "[i]n those cases where a plaintiff is unable to produce direct evidence of a product's defective condition," in which case the "theory permits a plaintiff to prove a defect through circumstantial evidence." *Mracek v. Bryn Mawr Hosp.*, 610 F. Supp. 2d 401, 407 (E.D. Pa. 2009), *aff'd,* 363 F. App'x 925 (3d Cir. 2010) (internal citations omitted).

14

By contrast, in this case, there is direct evidence that there were problems with the

concrete supplied by Pocono. Rajabipour testified at deposition that "there are several

performance requirements for PennDOT Class A concrete that the concrete that was

supplied by Pocono, unfortunately, did not meet. So, I disagree that the concrete provided

by Pocono meets the form, fit, and function of a PennDOT Class A concrete." Doc. 216-3 at

104:7-13. He agreed with the proposition that "one of the deficiencies...in the concrete

delivered by Pocono was the high water-to-cement ratio." Id. at 122:13-16. Rajabipour

testified that this water-to-cement ratio can cause "a number of negative effects...It can

result in high shrinkage. It can shorten the life or resistance of the concrete against

corrosion. It reduces the load-bearing capacity and the strength of the concrete." Id. at

122:20-123:3. He also testified that he has personally witnessed the resulting defects in the

Drop Lot:

> Q.    Have you seen any evidence of these risks manifesting themselves in
>       the Drop Lot as it exists today, as in shrinkage?
> A.    Yes.
> Q.    How about cracking?
> A.    Well there are -- there are one family of cracks that exist at the Drop
>       Lot are a result of shrinkage, and I note that the shrinkage is -- high
>       shrinkage is a result of low – high water/cement ratio...

Id. 123:4-13. Furthermore, Pocono attached both of New Prime's expert reports to

its statement of undisputed facts without disputing the reports' findings. Expert Rajabipour

conducted at least two site visits at the Drop Lot and reviewed underlying discovery

documents in preparation for his report. Rajabipour Report, at 2-3. He found that although

15

Pocono purported to supply "PennDOT Class A equivalent" concrete, it did not meet the relevant standards "due to its high [water to concrete] ratio, low cement content, addition of extra water (up to 25 gal) at the job site by Pocono drivers, and the low 7-day compressive strength of the concrete." Doc. 216-1, at 13.

Rajabipour also found that "the concrete placed at the Drop Lot had "excessive slump," which is an industry term for the "measure of concrete's fluidity and workability." *Id.* at 6. He pointed to the documents produced by Pocono during discovery, which showed that while "Pocono's concrete delivery tickets show design slump of 4.0 inches, [] their in-house testing reported slump to be 5.25 to 6 inches when concrete trucks left Pocono's batch plant". *Id.* at 7. In addition, the Guedelhoefer expert report concluded, based on at least four site visits and review of the underlying documents, that "the concrete provided by PTI [i.e. Pocono] for the Drop Lot slab was of inadequate strength for use at a tractor-trailer parking lot." Doc. 216-2 at 12."

Instead of disputing the underlying evidence relied upon by Plaintiff's experts or disputing their conclusions that the concrete—as supplied by Pocono—was defective, Pocono merely argues that New Prime's experts "identified numerous other causes of the alleged defects in Drop Lot concrete surface," including the "improper installation by Balchune, improper inspection by Midlantic, and improper design [by Civil Design]." Doc. 230, at 13. However, Pocono's brief conveniently leaves out the fact that those same experts also found the concrete supplied by Pocono to be defective—even though its own

16

statement of facts conceded that the expert reports found the concrete failed to meet industry standards and was inappropriate for the Drop Lot project. Doc. 216 ¶¶ 33-34. Pocono does not deny that it contributed to the excessive slump, nor does it address the underlying discovery documents relied upon by the experts showing that there were issues with the concrete[4].

In this case, New Prime has presented both direct and circumstantial evidence regarding the potential defect of the concrete as it was supplied by Pocono. As discussed above, plaintiff only has the burden of eliminating other secondary causes when it is relying only upon circumstantial evidence. Where, as here, there is direct evidence on the alleged breach of implied warranty by the moving defendant, and where, as here, the defendant has made no effort to dispute such evidence, granting summary judgment would be premature. See Kruger, 996 F. Supp. at 454 (denying motion for summary judgment upon finding that "there is both direct and circumstantial evidence from which a jury could infer that the car was defective or not as warranted.")

---

[4] The Court notes that while Plaintiff's expert reports cite extensively from deposition testimony and documentary evidence, New Prime has failed to submit the underlying documents as part of the record in response to the motion, but instead only relied on its expert reports. While this is imprudent practice, the Court will not penalize New Prime by finding that there is no direct evidence on Pocono's concrete's defect. To enter summary judgment against New Prime based on this technical ground would be sophistic, especially since Pocono does not take issue with the experts' reliance on such evidence or the experts' conclusions. Furthermore, Pocono's own motion papers attach as an exhibit the direct testimony of Rajabipour, which expounded on his reasons for concluding that Pocono's concrete was both defective and caused the Drop Lot's cracking and peeling. Doc. 216-3. Taking the evidence before the Court as a whole, including the deposition testimony and the expert reports, both of which are undisputed and attached to Pocono's own statement of facts, the Court finds there is sufficient direct evidence to create an issue of fact as to the concrete's defect.

Whether Pocono's concrete breached an implied warranty, and to what extent the breach contributed to Plaintiffs' overall injury, remain triable issues of fact. At best, Pocono has pointed the finger at other defendants, arguing that there are other factors that could have contributed to New Prime's ultimate injury. Pocono concludes that because New Prime "cannot establish the absence of other reasonable secondary causes of its concrete lot surface failure...Pocono is entitled to judgment as a matter of law in its favor." Doc. 230, at 15. But at this stage of litigation, the plaintiff need not establish the exact comparative faults of other defendants. A plaintiff may survive summary judgment by supplying some direct evidence on the issue of the breach of implied warranty. New Prime has done so. Sufficient evidence, both circumstantial and direct, exists to create a genuine issue of fact as to whether the concrete, as supplied by Pocono, was defective. The ultimate determination of whether Pocono breached any implied warranties will be left to the jury.

## II.  Pocono's Motion on Other Defendants' Crossclaims Against It

In addition to moving for summary judgment on New Prime's claim, Pocono also argues that other defendants' crossclaims against it should be dismissed. As discussed above, three groups of defendants have lodged conclusory crossclaims against Pocono. Midlantic alleges that if Plaintiff sustained damages, then all other defendants "are primarily liable" and "are liable to Midlantic [] by way of contribution and/or indemnity." Doc. 200, at 16-17. Marranca alleged that "to the extent that there are defects or deficiencies in the concrete at the Drop Lot, such were caused by the acts and omission of one or all of the

18

other Defendants..." and that they are "entitled to contribution" from other defendants. Doc. 201 ¶¶ 130, 132. Balchune alleged that to the extent New Prime suffered damages, "said damages were not caused by any act or omission of Balchune and, instead, were caused by [other defendants]," who are liable to Balchune "for contribution and/or indemnity." Doc. 212, at 11-12.

Despite the fact that Pocono's motion stated that "there is no genuine dispute as to any issue of material fact with respect to...the other Defendants' cross-claims against Pocono," doc. 215 ¶ 29, and despite the fact that Pocono's opening brief devoted a section to arguing that these crossclaims should fail, doc. 230, at 16-21, none of the defendants opposed Pocono's motion. Since these defendants have not opposed the motion, any argument that their crossclaims against Pocono should survive may be waived. However, "where a movant has the burden of proof and a non-movant does not respond to a motion at all, a district court must still find that summary judgment is 'appropriate' under FRCP 56(c) by determining 'that the facts specified in or connection with the motion entitle the moving party to judgment as a matter of law.'" *Hitchens v. Cty. of Montgomery*, 98 F. App'x 106, 110 (3d Cir. 2004) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir.1990)).

Based on the record before it, the Court cannot conclude that any defendant has a valid crossclaim against Pocono for indemnity or contribution. In Pennsylvania, contribution is a fault-sharing mechanism only available between joint tortfeasors. 42 Pa.C.S. § 8324.

"The right of contribution under Pennsylvania law is governed by the Pennsylvania Uniform Contribution Among Tortfeasors Act." *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016) (citing 42 Pa. C.S. §§ 8322-8327). The Act defines joint tortfeasors as "two or more persons jointly or severally liable *in tort* for the same injury to persons or property." *Id.* (citing 42 Pa. C.S. § 8322) (emphasis in original). Thus, "[t]he right to contribution *only* arises among joint tortfeasors." *Bank v. City of Philadelphia.*, 991 F. Supp. 2d 523, 538 (E.D. Pa. 2014) (emphasis in original). *Cf. Harmelin v. Man Fin., Inc.*, 2007 WL 3085867, at *2 (E.D. Pa. Oct. 17, 2007) ("Contribution is only proper as to joint tortfeasors").

None of the other defendants have alleged a crossclaim sounding in tort against Pocono. Instead, they have only conclusorily alleged that Pocono is liable to them by contribution and/or indemnity. Such allegations are unsupported by the statements of facts or exhibits filed in this motion, which do not suggest that Pocono owed any tortious duties to the other defendants. Nor has New Prime alleged an action in tort against Pocono. Rather, Pocono is only alleged to have breached an implied warranty in this action. Therefore, it cannot be said to be a joint tortfeasor, and thus cannot be liable for contribution. *Bank*, 991 F. Supp. 2d at 538 (dismissing crossclaim for contribution because "[n]owhere in its crossclaim does Century Motors allege that it and the Foster Defendants are joint tortfeasors.")

Pocono also cannot be liable for indemnity to any of the other defendants. "Under Pennsylvania law, indemnity is available only (1) "where there is an express contract to indemnify, or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000) (internal citation omitted). The second form of indemnity is often called common law indemnity. *See e.g. Foster v. City of Phila.*, 2014 WL 12616852, at *1 (M.D. Pa. Oct. 24, 2014) ("If there is no express contract to indemnify, then the party seeking indemnity must rely on the second option—common law indemnification"). None of the other defendants allege a contractual agreement for indemnification between them and Pocono. Doc. 216 ¶ 41. Nor have the defendants disputed Pocono's statement of facts, which contends that there is no indemnification agreement between Pocono and any other defendant. *Id.* ¶¶ 39-41. While Pocono entered into a contract with Balchune, it was a one-page price quote that did not contain any indemnification provisions. Doc. 216-6. Pocono has no contract with any other defendant. Doc. 216 ¶ 41. Thus, there is no express indemnification agreement that would support a crossclaim for contractual indemnity.

Secondly, common law indemnity is unavailable for the same reason that the contribution crossclaims must fail: "both common law indemnity and contribution claims must be grounded in tortious conduct." *EQT Production Company*, 179 F. Supp. 3d at 495. "Indemnity, like contribution, is based upon a tort theory of liability…Without a tort, there can be no tort-feasor, and without a tort-feasor, there can be no right to contribution or

indemnity." *Global Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669, 673 (E.D. Pa. 2008) (dismissing both contribution and common law indemnity claims on summary judgment, as the party seeking indemnity and contribution "does not have a cause of action in tort against [defendant]"). *See also Eastern Elec. Corp. v. Rumsey Elec. Co.*, 2010 WL 2788294, at \*2 (E.D. Pa. July 14, 2010) ("the great weight of authority is that common-law indemnity is unavailable in breach of contract cases"); *Mobile Dredging & Pumping Co. v. City of Gloucester*, 2005 WL 1876080, at \*4 (D.N.J. Aug. 4, 2005) ("Common law indemnity is a means of restitution to be used by one tortfeasor against another, and not when the third party plaintiff's liability is based on a breached contract between it and the original plaintiff").

As discussed above, no defendant has alleged a claim sounding in tort in their crossclaims against Pocono—in fact, they have not alleged anything except that Pocono is liable by way of either contribution or indemnity, without specifically alleging any tortious conduct on Pocono's part. *See e.g.* Doc. 200, at 16-17. Since, New Prime has not alleged Pocono to be a tortfeasor either, Pocono cannot be held out as a tortfeasor in this action. Finally, the crossclaims fail to allege a fundamental tenet of common law indemnity—a legal relationship from which liability may attach. Common law indemnity "is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a *legal relationship* to the party at fault." *City of Wilkes-Barre v. Kaminski Bros.*, 804 A.2d 89, 92 (Pa. Commw. Ct. 2002) (emphasis

added). As Pocono's statement of facts states: "None of the other Defendants has alleged the existence of, nor does there exist, a special relationship between any other Defendant and Pocono that would support a claim for common law indemnity." Doc. 216 ¶ 42. None of the other defendants have disputed this fact. Therefore, there is no evidence before the Court that Pocono may be liable to another defendant for express or common law indemnity. In sum, all crossclaims against Pocono must be dismissed.

## V. CONCLUSION

For the reasons outlined above, Pocono's motion for summary judgment (Doc. 215) will be denied in part and granted in part. A separate Order will follow.

Robert D. Mariani
United States District Judge