THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEW PRIME, INC., :
 :
    Plaintiff, :
 :
v. : 3:14-CR-2410
 : (JUDGE MARIANI)
BRANDON BALCHUNE :
CONSTRUCTION, INC., POCONO :
TRANSCRETE, INC., PATRICK :
MCLAINE, P.E., CIVIL DESIGN :
PARTNERS, INC., JERRY RANIELI, :
SAMUEL J. MARRANCA, SAMUEL J. :
MARRANCA GENERAL CONTRACTING :
CO., MIDLANTIC ENGINEERING, INC. :
 :
    Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION

This case concerns the construction of a defective concrete parking lot, for which plaintiff has brought claims against seven defendants, all of whom were contractors or subcontractors for the construction project. Plaintiff has alleged eleven counts for breaches of contract, breaches of implied warranties, and negligence relating to the construction. Presently before the Court are five motions for summary judgment brought by defendants against plaintiff. For sake of clarity, the Court will address each of the five motions in a separate opinion, though the underlying facts of the case remain substantively the same.

1

This opinion addresses Defendant Brandon Balchune Construction, Inc. ("Balchune")'s motion for summary judgment as to plaintiff's breach of contract and breach of warranty claims against it. Doc. 217.

## II. STATEMENT OF UNDISPUTED FACTS

Balchune has submitted a Statement of Material Facts as to which it argues there is no genuine issue or dispute for trial. Doc. 218. Plaintiff has submitted an opposition and a "Counterstatement of Material Facts." Docs. 280, 282. The following facts are not reasonably in dispute. Plaintiff, New Prime, is an interstate trucking company that hired Balchune for the construction of a parking lot ("Drop Lot"). Doc. 218 ¶ 1. The Drop Lot was to provide a space for New Prime's drivers to park and store tractor trailers. *Id.* ¶ 8. On August 24, 2012, Balchune entered in to an agreement with New Prime for the Drop Lot project for $1,631,278.00. *Id.* ¶¶ 2-3; Doc. 218-1, at 2-3. The contract provided that Balchune would "place concrete as per spec[ifications]," but it did not detail what the specifications were. *Id.* ¶¶ 4, 6. Defendant Pocono Transcrete, Inc. ("Pocono") supplied the concrete used for the Drop Lot. *Id.* ¶ 7.

The construction of the Drop Lot was completed by Balchune around February, 2013. *Id.* ¶ 10. In March, 2014, an inspection by New Prime revealed that the concrete surface of the Drop Lot was cracking and peeling. *Id.* ¶ 11. Thus, New Prime brought suit against Balchune and other contractors for the project, alleging that the Drop Lot's surface is defective. Doc. 156. One of New Prime's experts, Jeffrey Willoughby, estimates the

damages to be between $6.9 to 7.7 million. Doc. 218-1, at 132-140. Balchune asserts that New Prime's employee Richard Yarborough testified that "he is not aware of any diminution in value of the [Drop Lot] property." Doc. 218 ¶ 16. Joseph Fumanti and Floyd Rubino, both New Prime employees, also testified that the Drop Lot has been in continuous use for parking trailers since construction was completed. Doc. 218-1 at 125-126. Balchune thus claims that despite allegations of defects, the Drop Lot "is still in use twenty four hours a day, seven days a week and has been used continuously since construction was complete." Doc. 218 ¶ 12. New Prime, however, disputes its own employees' account and asserts that it "has been forced to close various sections of the Drop Lot." Doc. 282 ¶ 12. Furthermore, the Court has reviewed the cited portions of the witnesses' testimony, and none of the cited testimony refers to the value of the Drop Lot property, nor is it clear from the record why New Prime employees would be in the position to opine on the market value of the Drop Lot. In any event, New Prime disputes the characterization of the witness testimony and refers the Court to its expert reports, which analyze the relative faults of Balchune and other contractors involved in the Drop Lot project, as well as the estimated damages to New Prime. Doc. 282 ¶ 16.

### III. Procedural History

On December 22, 2014, New Prime filed its original complaint naming Balchune and Pocono as defendants. Doc. 1. On August 10, 2015, New Prime filed an Amended Complaint adding Patrick McLaine, Civil Design Partners, Jerry Ranieli, Samuel J.

3

Marranca, and Samuel J. Marranca General Contracting Company as defendants. Doc. 36.[1] On July 13, 2016, New Prime filed the Second Amended Complaint (which is the operative complaint for this motion), adding Midlantic as a defendant. Doc. 156.

The Second Amended Complaint contains eleven counts as follows: Count I (Breach of Contract as against Balchune); Count II (Breach of Warranty as against Balchune); Count III (Breach of Warranty as against Pocono); Count IV (Breach of Contract as against Patrick McLaine and Civil Design Partners); Count V (Breach of Warranty as against Patrick McLaine and Civil Design Partners); Count VI (Breach of Contract as against Jerry Ranieli); Count VII (Negligence as against Jerry Ranieli); Count VIII (Breach of Contract as against Marranca; Count IX (Negligence as against Marranca); Count X (Breach of Contract as against Midlantic); and Count XI (Negligence as against Midlantic). *Id.* After the parties engaged in discovery, all defendants except Ranieli have filed motions for summary judgment. In total, there are five pending motions for summary judgment before the Court— brought by Pocono (Doc. 215), McLaine and Civil Design (Doc. 219), Balchune (Doc. 217), the Marranca Defendants (Doc. 202), and Midlantic (Doc. 210).

To make matters more complicated, all defendants (with the exception of Jerry Ranieli) have filed crossclaims against other defendants in this case. *See* Docs. 161 (Pocono's Answer and Crossclaims), 200 (Midlantic's Answer and Crossclaim), 201

---

[1] On the same day, Balchune filed a "Joinder Complaint" against Midlantic. Doc. 37. The Joinder Complaint was dismissed on May 5, 2017 following New Prime's addition of Midlantic as a named defendant.

4

(Marranca Defendants' Answer and Crossclaims), 212 (Balchune's Answer and Crossclaims), 224 (McLaine Defendants' Answer and Crossclaims). The McLaine Defendants have since dropped their crossclaims. *See e.g.* Doc. 265 at 1(stating that "[a]fter analysis, CDP and McLaine do not believe they have valid crossclaims against any defendant, and hereby withdraw them").

None of the crossclaims allege specifically allege any acts or omissions that could support of a finding of breach of contractual duties, breach of other legal obligations, or breach of any duties sounding in tort. *See e.g.* Doc. 200, at 16-17 (Midlantic's crossclaim alleging only that if Plaintiff sustained damages, then all other defendants "are primarily liable" and "are liable to Midlantic [] by way of contribution and/or indemnity."); Doc. 201, ¶¶ 130, 132 (Marranca Defendants' crossclaim alleging that "to the extent that there are defects or deficiencies in the concrete at the Drop Lot, such were caused by the acts and omission of one or all of the other Defendants..." and that they are "entitled to contribution" from other defendants); Doc. 212, at 11-12 (Balchune's crossclaim alleging that to the extent New Prime suffered damages, "said damages were not caused by any act or omission of Balchune and, instead, were caused by [other defendants]," who are liable to Balchune "for contribution and/or indemnity"); Doc. 161, at 16-17 (Pocono's crossclaim alleging that "to the extent there are defects or deficiencies in the concrete at the Drop Lot, such defects or deficiencies were caused by the actions of one or all of the other

Defendants," and that "Pocono is entitled to contribution from [all other Defendants] for any damages assessed against Pocono").

The present opinion concerns Balchune's motion for summary judgment, arguing that New Prime's claims against it must be dismissed because of New Prime's failure to establish "diminution in the value of the property." Doc. 231, at 4.[2] For reasons stated below, the Court will deny Balchune's motion for summary judgment.

## III. STANDARDS OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, ...[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

---

[2] While the brief states in passing in its "Conclusion" paragraph that "all crossclaims asserted against [Balchune]" should be dismissed, the brief does not otherwise present argument as to any pending crossclaims against Balchune. *Id.* at 12. It is well established that in the Third Circuit, "[a]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir. 2004). Thus, the Court will not address other defendants' crossclaims against Balchune.

Furthermore, the McLaine Defendants filed an opposition to the instant motion, arguing only that Balchune's crossclaim against them should be dismissed. Doc. 259, at 4 (presenting the relevant issue as "Whether Brandon Balchune Construction, Inc. has a valid crossclaim against CDP and/or McLaine" and suggesting an answer in the negative). However, since Balchune did not move for summary judgment on its own crossclaims against other defendants, they cannot be properly resolved on the instant motion, which has provided no notice to any of the crossclaim-defendants that they had a duty to respond. Thus, the Court need not address the McLaine Defendants' opposition brief.

S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

### I. New Prime's Claims Against Marranca

The Second Amended Complaint alleges two claims against Balchune—breach of contract and breach of warranty. Doc. 156, Counts I, II. Balchune has not disputed his potential liability to New Prime on either of these counts, but rather, moves for dismissal solely on the ground that New Prime has not adequately established damages, i.e. that it "failed to introduce any evidence of the proper measure of damages in this case – diminution in value of the property." Doc. 231, at 5.

"In Pennsylvania, the general measure of damages for permanent harm to real property is the diminution in market value attributable to the conduct, product, or instrumentality giving rise to liability, and in situations in which the harm is reparable, damages are assessed according to the lesser of the cost of repair or the market value of the affected property." *Pennsylvania Dep't of General Services v. U.S. Mineral Products*, 898 A.2d 590, 596 (Pa. 2006) (citing *Lobozzo v. Adam Eidemiller, Inc.*, 263 A.2d 432, 437

8

(Pa. 1970)). Limiting damages to the "diminution in value" in cases involving permanent harm is meant to prevent a "windfall" to plaintiffs. *Douglass v. Licciardi Const. Co.*, 562 A.2d 913, 915 (Pa. Super. Ct. 1989). As the *Douglass* court explained, when the cost of repairing the defect "will be clearly disproportionate to the probable loss in value to the injured party," awarding cost of repair damages "would then give the injured party a recovery greatly in excess of the loss in value to him and result in a substantial windfall." *Id.* (citing Restatement (Second) of Contracts § 347, Comment C). In such a case, "damages will be based instead on the difference between the market price that the property would have had without the defects and the market price of the property with the defects." *Id.* See also *Ecksel v. Orleans Const. Co.*, 519 A.2d 1021, 1029 (Pa. Super. Ct. 1987) ("[T]he measure of damages in cases where a homeowner sues for defective construction is the difference between the market value of the house as constructed and the market value that the house would have had if constructed as promised, with the qualification that if it is reasonably practical to cure the defects in construction by repairs, and if the cost of repairs does not exceed the difference in market value, then the measure of damages is the cost of repairs"). However, Pennsylvania "permits under certain circumstances a cost-of-repair theory of damages *even where* the damage is permanent or where the cost of repair exceeds the actual value of the property. The exception applies where, due to some unique feature of the property, market value is difficult or impossible to ascertain." *Vassell v. Travis*, 2007 WL 2571634, at *2 (E.D. Pa. Aug. 31, 2007). "[I]n the absence of comparable

9

properties in the marketplace or income generated by the property in question, construction costs may be the only reasonably available indicator of value." *Mineral Products*, 898 A.2d at 599.

In support of its motion, Balchune points to the report of New Prime's economic expert, Jeffrey Willoughby. Doc. 218-1, at 132-140. Willoughby estimates three possible options for "how to repair and/or replace the existing parking lot," pricing them to be at $4.5 to 5.3 million. *Id.* This amount, combined with other "additional costs" and "lost profits," amount to a total of $6.9 to 7.7 million in estimated economic damages. *Id.* Balchune argues that because the cost-of-repair estimates are much more than the price of the original contract (around $1.6 million), New Prime's claim must fail because it is attempting to obtain a "windfall" of damages disproportionate to the diminution in market value. Doc. 231, at 3-4.

The problem, however, is that Balchune assumes a prerequisite to using the "diminution of market value" measure of damages, which is that the alleged defect must be permanent. "The classification of damage as 'permanent' or 'repairable' requires a fact-intensive inquiry." *Vassell*, 2007 WL 2571634, at *4. Like the defendant in *Vassell*, Balchune essentially asks this Court to hold that the damage is "permanent" as a matter of law simply because the damages requested by plaintiff are higher than the original contract price. However, Balchune fails to recognize "that permanency of harm should be determined by the trier of fact, and has not provided the Court with any case law

demonstrating circumstances where this issue may be decided as a matter of law." *Id.* at *5 (denying summary judgment because "whether the damage to the farmhouse is classified as "permanent" or "repairable" [is] a factual issue that must be left for the jury"). *See also Duquesne Light v. Woodland Hills School District*, 700 A.2d 1038, 1053 (Pa. Commw. Ct. 1997) ("Whether or not an injury to real property is 'permanent' is an issue for the trier of fact").

Even if the Court assumes the damages were permanent in this case, Balchune faces an additional hurdle. Taking New Prime's estimates for "lost profits" and "additional costs" out of the equation, the estimates for cost-of-repair is around $4.5 to 5.3 million. Doc. 218-1, at 133. While this cost-of-repair estimate is higher than the contract price of $1.6 million, whether or not such a difference is *unreasonably* disproportionate as to preclude cost-of-repair damages is an issue for the jury. Furthermore, Balchune failed to address the exception to the diminution in value rule, that is, even where "the damage is permanent or where the cost of repair exceeds the actual value of the property," cost-of-repair damages may nevertheless be awarded "where, due to some unique feature of the property, market value is difficult or impossible to ascertain." *Vassell*, 2007 WL 2571634, at *2. Balchune has not produced any evidence on market value of the Drop Lot as it stands today, including "comparable properties in the marketplace or income generated by the property in question." *Mineral Products*, 898 A.2d at 599. In the absence of such evidence, "construction costs may be the only reasonably available indicator of value." *Id.*

11

Finally, the Court finds that even if the diminution of value measure is to be used, New Prime has offered sufficient evidence on the subject to withstand summary judgment. For example, Willoughby's report discusses the potential "loss of profits and extra expenses related to the productivity of the shop at the Pittston terminal." Doc. 218-1, at 136. As New Prime asserts, the Drop Lot is part of a "wider Pittston Terminal property" owned by New Prime, containing revenue-generating shops. Doc. 280, at 15. Willoughby estimated lost profits to the shop revenue to be $686,581 over a period of nine months. Doc. 218-1, at 136. If the jury agrees with New Prime that the Drop Lot is not a "standalone real property," but rather, "a constituent component of the Pittston Terminal," then the diminution of market value may very well include the decrease in the shop revenue, which would lead to a decrease in the value of the overall New Prime property. Balchune, unfortunately, has not produced any evidence, expert or otherwise, to counter New Prime's calculations of lost profits. In other words, even assuming that diminution of market value is the proper measure of damages, the record is still inconclusive as to how the decrease of market value should be calculated. Thus, there is a genuine issue of material fact as to whether the damages from the Drop Lot should be characterized as "permanent" or "repairable," and if the damages are in fact "permanent," then there would be a separate issue of fact as to the proper calculation of such damages.

As a final point, the Court notes that Balchune has not briefed the issue of his liability in this case. Thus, as a practical matter, the filing of this summary judgment motion puts the

cart before the horse. The cases Balchune relied upon were all opinions written after a trial verdict—at which time damages naturally becomes an issue. Pragmatically speaking, asking the Court to decide on the damages issue now, without having first resolved the issue of liability, is a fruitless exercise. New Prime's claims against Balchune will proceed to trial.[3]

## V. CONCLUSION

For the reasons outlined above, Balchune's motion for summary judgment (Doc. 215) will be denied in part and granted in part. A separate Order will follow.

Robert D. Mariani
United States District Judge

---

[3] Pocono also joined the instant motion by filing a "notice of joinder." Doc. 281. New Prime opposed Pocono's joinder on the grounds that it was untimely, since it was filed after the dispositive motions deadline. Doc. 304. Pocono subsequently filed a "reply brief" (though there was no "opening brief" by Pocono in this motion). Doc. 305, at 4. Notably, Pocono did not engage in any substantive arguments on whether Balchune's requested relief should be granted. Instead, Pocono only asserts that "*if* Balchune's argument is accepted, the same logic compels the dismissal of New Prime's claims against Pocono as well." *Id.* at 4 (emphasis added). The court harbors serious doubts as to whether Pocono may avoid briefing responsibilities in this manner. See M.D. Pa. Local Rule 7.5 ("If a supporting brief is not filed within [fourteen days] the motion shall be deemed to be withdrawn"); M.D. Pa. Local Rule 7.8 ("No brief may incorporate by reference all or any portion of any other brief"). To the extent Pocono's joinder is permitted, it is denied for the same reasons stated in this opinion.